# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ALLIANZ GLOBAL CORPORATE AND   )
SPECIALTY MARINE INSURANCE CO., )
                               )
          Plaintiff,           )
                               )     Judge Joan B. Gottschall
          v.               )
                               )     Case No. 12 C 0869
HOST INTERNATIONAL, INC.,        )
                               )
          Defendants.      )

## MEMORANDUM OPINION & ORDER

Plaintiff Allianz Global Corporate and Specialty Marine Insurance Company ("Allianz") has brought a two-count Second Amended Complaint against Defendant Host International, Inc. ("Host"), for negligence and breach of contract. The claims arise from damage to a parking garage insured by Allianz that was allegedly caused by an employee of Host. Allianz brings the action as subrogee of its insured, seeking to recover damages previously paid by Allianz to the parking garage owner. Allianz now moves for summary judgment on both counts, while Host moves for summary judgment on count II. For the following reasons, Allianz's motion for summary judgment is denied, and Host's motion for summary judgment as to count II is granted.

## I. FACTS

The following facts are undisputed for purposes of the motions for summary judgment, except as otherwise noted. Allianz is an Illinois corporation that provides insurance and financial services. At all relevant times, Allianz insured CFS 2907 CHICAGO, LLC d/b/a AVISTAR OHARE ("CFS") for a parking garage owned and operated by CFS at 3700 N. Mannheim, Franklin Park, Illinois 60131 ("the parking garage"). The parking garage was

previously owned and operated by Parking Company of American Airports, LLC ("PCAA"). CFS acquired PCAA in an asset purchase agreement on April 29, 2010.[1]

Host is a Delaware corporation in the business of providing food, beverage, and retail services to travel facilities. On September 23, 2008, Host entered into a license agreement with PCAA to allow the use of unreserved spaces in the parking garage for Host's employees working at O'Hare International Airport. The license agreement states, "PCAA licenses to [Host] to possess 118 active permits," and "[t]he parking area may only be used for Permitted Vehicles operated by employees of [Host]." (Pl.'s Statement of Undisputed Facts ("SOF") Ex. B (License Agreement) 2, ECF No. 51-2.) Host sold some of its employees, including Hugo Macias, parking permits to access the parking garage, and Macias and some other Host employees parked in the garage and proceeded from there to the airport to work for Host.

Section 1.5 of the license agreement between Host and PCAA states:

> 1.5 PCAA does not have knowledge or expertise as a guard or security service, and does not employ personnel for that purpose, nor do PCAA's employees undertake the obligation to guard or protect the Parking Area. PCAA shall not be responsible for any of the Permitted Vehicles or their contents in the Parking Area nor for any other items associated with the Parking Area. The Licensee shall pay, and shall indemnify, defend and hold harmless PCAA from and against any and all claims, losses, damages, impositions, offsets, expenses, costs, liabilities, obligations and charges of any kind whatsoever (including, without limitation, reasonable attorney's fees) which shall arise or be incurred, or shall become due, during the term of this License, with respect to or in connection with, the Permitted Vehicles or other of its motor vehicles parked in the Parking Area. PCAA shall not be required to provide any services or do any act in connection with the Parking Area, and the fee under this License shall be paid to PCAA without any claim on the part of the Licensee for diminution or abatement.

(*Id.*) When it acquired PCAA, CFS assumed PCAA's contractual rights in the license agreement with Host.

---

[1] As evidence of this transaction, Allianz cites a closing statement dated June 2, 2010.

The license agreement between CFS and Host was in effect on June 19, 2010. On that day, Macias arrived at the parking garage, hurrying to catch a shuttle bus to O'Hare Airport that was provided by CFS (doing business as Avistar). Macias was employed by Host as a porter at United Airlines' Red Carpet Club in the airport. He had worked at Host since January 14, 2004. Macias struck a pole in the parking garage with his car. The pole fell over.

The parties dispute what happened next. Allianz describes the pole as a "support beam" and contends that the roof of the garage later fell down as a result of the accident, but it cites only its complaint and Macias's deposition. The complaint is not verified, so Allianz cannot use it as evidence. *Cf. Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996) (reversing summary judgment for defendant where plaintiff relied on a verified complaint as evidentiary support because unlike an ordinary complaint, verification "converted the complaint . . . into an affidavit"). Macias's deposition simply states that the pole fell over. (Pl.'s SOF Ex. C (Macias Dep.) 18-22, ECF No. 51-3.) Host disagrees that the accident caused the roof of the garage to collapse, citing Macias's testimony that no part of the roof fell down while he was in the garage. (*Id.* at 35:6-8.)

Macias testified that he had been parking daily in the parking garage for over a year before the accident. (*Id.* 9:5-13.) He further testified that parking in the lot was optional for Host employees, and that CFS/Avistar provided a shuttle bus from the parking garage to the airport terminal, but Host did not require him to take the bus. (*Id.* at 17:2-8, 38:1-8.) According to the Avistar Airport Parking Policies and Regulations signed by Macias on September 25, 2008, "[t]he parking pass [was] to be used by HMSHost associates only," and the car parked in the lot had to be listed on an "AviStar monthly parking form." (Pl.'s SOF Ex. E (Avistar Airport Parking Policies and Regulations).) According to Macias's Notice of Termination, dated April

18, 2011, the permit for the parking garage was returned when he was terminated by Host. (Pl.'s SOF Ex. D (Notice of Termination).)

Allianz brings this action as subrogee of CFS pursuant to the terms of its insurance policy. Allianz claims that it paid money to CFS for damages suffered to the garage and is therefore subrogated to the rights of CFS to the extent of that payment. Allianz contends that it sustained damages in the amount of $402,192.69 as a result of the accident and the ensuing collapse of the parking garage roof. It cites only to its non-verified complaint for the damages calculation. Host disputes the amount, citing only its answer to the complaint.

Count I pleads negligence, in violation of Illinois law. It alleges that Macias was acting within the scope of his employment when the accident occurred, and that Host, through Macias, owed CFS (and Allianz as CFS's subrogee) a duty of reasonable care when operating a vehicle in the parking garage. Count II pleads breach of contract with regard to the license agreement, based on Host's failure to indemnify CFS for property damage to the garage. Host denies that it breached the license agreement and maintains that it is not required under the agreement to indemnify CFS and Allianz for damages to the parking garage.

## II. LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The court ruling on the motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is called for when the nonmoving party is unable to establish the existence of an essential element of its case

on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

<h3 align="center">III. ANALYSIS</h3>

### A.  Count I (Negligence)

Allianz moves for summary judgment on count I of the Second Amended Complaint.  It argues that Macias was acting in the scope of his employment with Host at the time of the accident which, according to Allianz, caused the parking garage roof to collapse.

Under traditional principles of *respondeat superior*, an employer may be held liable for a tort committed by its employee if the tort is committed within the scope of employment. *Pyne v. Witmer*, 543 N.E.2d 1304, 1308 (Ill. 1989).  The *respondeat superior* doctrine can apply to negligent conduct, as long as it is committed within the scope of employment.  *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007).  The plaintiff bears the burden to show a relationship between the tort and the scope of employment.  *Pyne*, at 1304.

Illinois courts rely on the Second Restatement of Agency when determining whether an employee was acting in the scope of his employment when he committed a tortious act.  *Rodman v. CSX Intermodal, Inc.*, 938 N.E.2d 1136, 1139 (Ill. App. Ct. 2010).  According to the Restatement, three criteria must be met for an employee's acts to be considered within the scope of employment: the act is "(1) of the kind the employee is employed to perform; (2) occurs substantially within the authorized time and space limits; and (3) is actuated, at least in part, by a purpose to serve the master."  *Bagent*, 862 N.E.2d at 992 (citing Restatement (Second) of Agency § 228 (1958)).  "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master."  *Rodman*, 938 N.E.2d at 1140.

The Illinois Supreme Court has stated, "Generally, an employee traveling to or from work outside actual working hours is not in the scope of employment, but an exception exists for employees who are caused by their employers to travel away from a regular workplace or whose travel is at least partly for their employers' purposes rather than simply serving to convey the employees to or from a regular jobsite." *Pyne*, 543 N.E.2d at 1307. It has also stated that "[s]ummary judgment is generally inappropriate when scope of employment is at issue." *Id.* at 1308. This court has located no case in which, on facts similar to those presented here, judgment was granted for a plaintiff such as Allianz.

Allianz argues that Illinois courts have held that employees' injuries arose out of the course of their employment when they occurred in a parking lot within a reasonable time before or after work. *See Chmelik v. Vana*, 201 N.E.2d 434, 439 (Ill. 1964); *Brooks v. Carter*, 430 N.E.2d 566, 569 (Ill. App. Ct. 1981); and *Flynn v. Rathnau*, 559 N.E.2d 1102, 1103 (Ill. App. Ct. 1990). But those cases involved worker's compensation claims, which "are distinguishable in that the governing statute provides a different basis for liability than a common law tort negligence action premised on *respondeat superior* liability." *Rodman*, 938 N.E.2d at 1140. Precedents based on worker's compensation law at most "inform[]the analysis" in this tort action; they do not compel a conclusion. *Id.*

The court concludes that summary judgment is inappropriate in this case, because a reasonable jury could find that Macias's negligent conduct was not within the scope of his employment. All three criteria of § 228 of the Restatement must be met to conclude that an employee was acting within the scope of employment at the time of a tortious act. *Bagent*, 862 N.E.2d at 985. Here, there are issues of material fact as to each criterion. First, the evidence does not establish that Macias's conduct was "of the kind the employee is employed to perform."

It was not related to his job duties as a porter at the Red Carpet Club; Macias's job did not require him to drive. Nor did the accident occur "substantially within the authorized time and space limits" of Macias's employment. The evidence does not demonstrate that it occurred within work hours or that Macias was being paid at the time of the accident. Macias was driving his personal vehicle, and Host did not cover the costs of his transportation or control his route or how he operated his vehicle. Host did not assign Macias a particular spot in the parking garage, which was used by persons other than Host employees. Finally, issues of fact exist as to whether Macias's conduct was "actuated, at least in part, by a purpose to serve" [Host]. Macias was not fulfilling a job requirement by parking in the garage—employees were not required to drive to work at all, and they were merely given the option of parking in the parking garage. Driving to work furthered no goals or ends of Host. Rather, it was Macias's responsibility to get to work in the morning.

These facts suggest that Macias was still in transit to his workplace at the time of the accident in the parking garage. As a general rule, torts committed in transit are not considered within the scope of employment. *Pyne*, 543 N.E.2d at 1307. The court therefore denies Allianz's motion for summary judgment as to count I of the Second Amended Complaint.

## B. Count II (Breach of Contract)

Both parties have moved for summary judgment on count II of the complaint. The key issue with respect to this count is whether Host assumed a contractual duty under the license agreement to pay Allianz for damages to the parking garage caused by vehicles driven by Host employees. Both parties point to § 1.5 of the license agreement, which states:

> 1.5 PCAA does not have knowledge or expertise as a guard or security service, and does not employ personnel for that purpose, nor do PCAA's employees undertake the obligation to guard or protect the Parking Area. PCAA shall not be

responsible for any of the Permitted Vehicles or their contents in the Parking Area nor for any other items associated with the Parking Area. The Licensee shall pay, and shall indemnify, defend and hold harmless PCAA from and against any and all claims, losses, damages, impositions, offsets, expenses, costs, liabilities, obligations and charges of any kind whatsoever (including, without limitation, reasonable attorney's fees) which shall arise or be incurred, or shall become due, during the term of this License, with respect to or in connection with, the Permitted Vehicles or other of its motor vehicles parked in the Parking Area. PCAA shall not be required to provide any services or do any act in connection with the Parking Area, and the fee under this License shall be paid to PCAA without any claim on the part of the Licensee for diminution or abatement.

Allianz argues that, pursuant to § 1.5 of the license agreement, Host assumed the contractual duty to pay Allianz for damages of any kind resulting from any of the vehicles driven by Host employees in the parking garage. Allianz relies on *Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 936 N.E.2d 1127 (Ill. App. Ct. 2010), which held that a statement in an indemnification agreement that the defendant property owner agreed to "indemnify . . . [the plaintiff, a neighboring property owner] against any and all loss . . . arising out of [construction work on defendant's property]" was broad enough to encompass claims for losses suffered by the plaintiff as well as by third parties. *Id.* at 1133-34. Allianz argues that the license agreement at issue here should similarly be construed broadly to cover losses by the contracting parties, absent specific language limiting its application to third-party claims.

Host responds that the language of § 1.5 of the license agreement demonstrates that it was intended to protect Allianz only from third-party claims. Host points to the language of the provision stating that PCAA does not provide security or other services in connection with the parking area, and that PCAA shall be protected from and against claims resulting from its failure to provide services within the parking area. Host argues that this demonstrates that the intent of the agreement was not to cover claims *by* PCAA against Host, but rather to protect PCAA *from* claims that it failed to protect people and their property within the garage. As support, Host cites

*Open Kitchens, Inc. v. Gullo Int'l Dev. Corp.*, 466 N.E.2d 1313 (Ill. 1984), which involved a claim for damage to a building and equipment caused by construction work. The indemnity provision at issue in *Open Kitchens* stated that the defendant "shall indemnify and hold harmless the [plaintiff] and [its] agents and employees from and against all claims, damages, losses, expenses, liabilities, and demands, including attorneys' fees, of whatsoever kind or nature, arising out of, resulting from or connected with the performance of the Work." *Id.* at 1314. The Illinois Appellate Court interpreted that language to be an "indemnity provision" covering only "losses or injuries incurred by third parties." *Id.* at 1315.

The Illinois Supreme Court has stated, "When we interpret a contract, we seek to 'give effect to the intent of the parties.'" *Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007). That intent "is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id.* Here, the statement in the license agreement that Host was to pay PCAA for "any and all claims, losses, damages" must be interpreted in light of the statements in § 1.5 concerning PCAA's lack of responsibility for security in the parking garage. The only reasonable interpretation of this section of the agreement is that Host was to indemnify PCAA for claims of third parties for losses or injuries incurred in the parking garage. The duty to "indemnify, defend and hold harmless PCAA" could only arise where a third party filed an action against PCAA, claiming that PCAA had failed to properly secure the parking garage.

Because nothing in the license agreement indicates that Host agreed to pay PCAA (and thus Allianz) for damages sustained to the parking garage itself, the court denies Allianz's motion for summary judgment as to count II of the Second Amended Complaint. Host's motion for summary judgment as to count II of the complaint is granted.

## IV. Conclusion

For the reasons stated above, Allianz's motion for summary judgment is denied, and Host's motion for summary judgment as to count II of the Second Amended Complaint is granted.


ENTER:


_____/s/_____

JOAN B. GOTTSCHALL
United States District Judge

DATED: April 16, 2013